ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| CRISTOPHER AARON CANNON T/C/C CRISTOPHER CANNON Peticionario<br><br>v.<br><br>EX PARTE | KLCE202301436 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Número: K DI2019-0358<br><br>Sobre:<br><br>Divorcio (Consentimiento Mutuo) |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, Presidenta, Jueza Rivera Marchand y Juez Rodríguez Flores

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece ante esta Curia, Cristopher Aaron Cannon (peticionario) y solicita que revoquemos la *Resolución*[1] que notificó el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario), el 31 de octubre de 2023. Mediante su dictamen, el foro primario renunció a ejercer su jurisdicción para evaluar una solicitud de reducción o relevo de pensión excónyuge.

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari.* Veamos.

**I.**

El 10 de agosto de 1994, el peticionario y Jennifer Lynn Overton (recurrida) contrajeron matrimonio en el Condado de Salt Lake de Utah, en los Estados Unidos. Luego de veintiún años, y por consentimiento mutuo, el TPI dictó una *Sentencia*[2] el 4 de diciembre de 2015, mediante la cual, declaró roto y disuelto el vínculo matrimonial entre el peticionario y la recurrida, quienes a esa fecha

---

[1] Apéndice, págs. 176-183.
[2] Apéndice, págs. 43-45.

Número Identificador:

RES2024_____

residían en Puerto Rico junto a los cuatro hijos de la pareja. Como parte de los acuerdos de divorcio,[3] el peticionario se comprometió a pagar a la recurrida -durante diez (10) años- quince mil dólares ($15,000.00) mensuales por concepto de pensión excónyuge.

Transcurrido cerca de cuatro años, el 15 de octubre de 2019, la recurrida instó una *Moción de desacato*[4] en respuesta al incumplimiento del peticionario con el pago total de la pensión alimentaria provisional correspondiente a dicho mes. En su *Oposición*,[5] el peticionario expuso que todos sus activos quedaron congelados producto de un pleito que incoó el Federal Trade Commission (FTC) en contra de la empresa Zurixx, LLC y de él en su carácter personal.[6] Añadió que, sus ingresos se originaban de las actividades económicas que realizaba Zurixx, LLC, las cuales fueron suspendidas a partir del 1 de noviembre de 2019, como resultado de un *injunction* instado en el referido pleito. Señaló que el monitoreo federal, del cual son objeto las entidades jurídicas que constituyen su única fuente de ingreso, imposibilita su cumplimiento con sus obligaciones alimentarias.

Cónsono con lo anterior, el 13 de noviembre de 2019, el peticionario instó ante el TPI una *Urgente solicitud de reducción de pensión y para que se deje sin efecto pensión excónyuge por cambio en circunstancias.*[7] Sustentó su reclamo en que, el pleito federal del cual es objeto cambió sus circunstancias económicas y le impiden cumplir con las obligaciones tal cual acordadas. Sobre tales bases, imploró la modificación urgente de la pensión a beneficio de sus hijos y que la pensión excónyuge se deje sin efecto o se reduzca

---

[3] Apéndice, pág. 22.
[4] Apéndice, pág. 53.
[5] Apéndice, págs. 56-93.
[6] Caso Número 2:19-cv-00713DAK-CMR.
[7] Apéndice, págs. 94-96.

sustancialmente. En respuesta, el 26 de noviembre de 2019, el foro primario notificó una *Orden*[8] en la cual dispuso:

> No ha lugar a la solicitud de modificación sumaria de la pensión alimentaria y pensión excónyuge vigentes. La modificación de la pensión alimentaria est[á] ante la consideración de la Examinadora de Pensiones. En cuanto a la pensión excónyuge, se discutirá en la vista del 28 de enero de 2020.

Al cabo de seis meses sin recibir del peticionario el pago de la pensión alimentaria a favor de los menores, la recurrida instó una segunda solicitud de desacato. Allí detalló que, el peticionario tampoco ha provisto plan médico a sus hijos menores de edad, a pesar de que presuntamente ha continuado con su estilo de vida de "multimillonario".[9]

En su *Oposición*[10] el peticionario arguyó que, el pleito del FTC estableció una orden de congelación de fondos y una prohibición de disposición de bienes, además de provocarle la pérdida de su empleo y la necesidad de obtener un nuevo empleo durante la crisis del COVID-19. Suplicó que procede atemperar el monto de la pensión alimentaria a su nueva realidad económica y a la cantidad correcta de menores, tras uno de ellos advenir a la mayoría de edad. Negó mantener el mismo estilo de vida y adujo que recibe ayuda económica de amigos y familiares. Allí también, solicitó al TPI que tome conocimiento del pago de $30,000.00 efectuado el 23 de junio de 2020 como abono de la deuda por concepto de pensión alimentaria.

Surge de la *Minuta*[11] de la vista sobre la solicitud de relevo de pensión excónyuge ante el TPI que, las partes optaron por dejar en suspenso esta controversia hasta tanto finalice el litigio federal del FTC. Presentado el *Informe de la Examinadora de Pensiones*

---

[8] Apéndice, págs. 97-99.
[9] Apéndice, págs. 100-105. Cita a la pág. 101 inciso 6.
[10] Apéndice, págs. 107-111.
[11] Apéndice, págs. 113-115.

*Alimenticias,*[12] el foro primario lo acogió y emitió una *Resolución*[13] el 20 de septiembre de 2021 en la cual desglosó las cuantías impuestas como pensión alimentaria permanente a favor de los menores. Puntualizamos que, el TPI nada dispuso en cuanto a la pensión excónyuge. Establecido lo anterior y en aras de continuar sus esfuerzos dirigidos a cumplimiento y cobro de los alimentos adeudados, la recurrida registró en la corte de Utah la *Sentencia* de divorcio y la *Resolución* sobre la pensión alimentaria permanente a favor de los menores. Ello, en respuesta a que ambas partes y los menores de edad habidos durante el matrimonio residen en el estado de Utah.[14]

Una vez culminó el litigio federal del FTC en noviembre de 2022, el peticionario instó ante el TPI una *Urgente solicitud para que se atienda finalmente la solicitud sobre la pensión excónyuge.*[15] Lo antes, con el objetivo de que el foro primario retome este asunto y celebre una vista para atender si procede modificar o relevarlo de la pensión excónyuge debido al cambio en las circunstancias económicas del peticionario.

En respuesta, la recurrida instó un petitorio de desestimación,[16] en el cual argumentó que, el TPI carece de jurisdicción sobre este asunto. Ello, debido a que ninguna de las partes reside actualmente en Puerto Rico y que el peticionario pretende reabrir un caso en la Isla sin haber mantenido contacto alguno durante los pasados tres años. Reconoció que, a solicitud de las partes, la pensión excónyuge se mantuvo en suspenso hasta tanto finalizara el caso del FTC, pero destacó que, lo antes demoró

---

[12] Apéndice, págs. 119-137.
[13] Apéndice, págs. 117-118.
[14] La recurrida regresó a Utah en el año 2017, mientras que el peticionario durante el mes de noviembre de 2019.
[15] Apéndice, págs. 138-139.
[16] Apéndice, págs. 142-143.

más de tres años sin que ello pueda tener el efecto de que el foro primario retuviese jurisdicción a perpetuidad.

Por su parte, el peticionario se opuso a la desestimación e insistió en que hubo un cambio en sus circunstancias económicas. Además, argumentó que su reclamo en cuanto a la pensión excónyuge la inició en Puerto Rico el 13 de noviembre de 2019 mientras residía en la Isla, asunto que no ha sido atendido. Expresó que, el hecho de que las partes ya no residen en Puerto Rico no priva al foro primario de jurisdicción para dilucidarlo. Expuso que, en su dictamen para hacer cumplir la *Resolución* del TPI dictada el 20 de septiembre de 2021, el foro de Utah reconoció que existe una controversia pendiente ante el TPI en Puerto Rico sobre pensión excónyuge y decretó que su intervención no pretende incidir sobre el referido asunto. A esos efectos, citó en lo pertinente lo que dispuso la corte de Utah:

> [i]f there is a pending modification effort in Puerto Rican court dealing with the parties' spousal/alimony and child support, this Order is not intended to affect any rights associated with that claim. Should a modification be granted for a period covered by the judgement entered herein, this judgement may need to be modified in the future.[17]

Evaluado lo anterior, el TPI notificó la *Resolución* impugnada mediante la cual rechazó asumir jurisdicción sobre este asunto. Hizo constar que, como el descubrimiento de prueba no ha comenzado, dilucidar esta controversia ante el foro de Utah no perjudicará a las partes. Resolvió que, el tribunal de Utah está en mejor posición para atender la solicitud de relevo o reducción de pensión excónyuge debido a que, las partes residen en dicho estado desde hace al menos cuatro años y es el foro con contactos sustanciales sobre las partes.

---

[17] Apéndice, pág. 151.

Luego de solicitar sin éxito la reconsideración, el peticionario insta ante esta Curia el presente recurso y señala la comisión de los siguientes errores:

> Erró el TPI al desestimar el reclamo de revisión o relevo de pensión excónyuge a pesar de que el mismo había sido oportunamente presentado desde 2019 y a pesar de ser el estado con jurisdicción continua y exclusiva sobre el asunto en controversia.

> Erró el TPI al desestimar bajo el fundamento equivocado en el sentido de que le causaría un daño a los menores, hijos de las partes.

> Erró el TPI al entender que el estado de Utah es el foro más conveniente para atender un reclamo de relevo o revisión de pensión excónyuge, cuando dicho estado ya se pronunció en deferencia a la jurisdicción de Puerto Rico en cuanto a este asunto.

En su oposición a la expedición del auto de *certiorari*, la recurrida argumenta que, a pesar de que denominaron pensión excónyuge la partida de $15,000.00 mensuales que el peticionario se obligó a pagarle, la realidad es que no puede considerarse como tal porque no cumple con el criterio esencial de la necesidad económica de la alimentista. Añade que, el dictamen recurrido es discrecional y no adjudica los méritos de la solicitud del peticionario. Analiza que, tal cual expuso el TPI, ello no representa una demora sobre la reclamación del peticionario en la medida en que el descubrimiento de prueba correspondiente no ha iniciado. Destaca que, en virtud de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, el peticionario no ha demostrado que el dictamen recurrido es contrario a Derecho o que el TPI actuó mediante pasión, prejuicio o parcialidad.

Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera*

*Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, resuelto el 8 de mayo de 2023; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros,* supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.,* 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *Íd.*; Véase, además, *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478, 486-487 (2019).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari.* *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023. La citada regla dispone:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* supra.

**III.**

En síntesis, el peticionario solicita que ejerzamos nuestra función discrecional para obligar al foro primario a ejercer su

jurisdicción y atender su reclamación atinente al relevo o reducción de la pensión excónyuge, ante el presunto cambio en sus circunstancias económicas.

Si bien es cierto que el caso de autos trata sobre asuntos de relaciones de familia, contemplados en la Regla 52.1 de Procedimiento Civil, *supra*, tras evaluar el recurso de epígrafe, al amparo de los criterios para la expedición del auto de c*ertiorari* de la Regla 40 del Reglamento de este Tribunal, *supra,* concluimos que el mismo no presenta un asunto que justifique nuestra intervención.

De un examen del expediente colegimos que, el foro primario ejerció su sana discreción al no asumir jurisdicción sobre el reclamo del peticionario para dar paso a que este asunto sea dilucidado por la corte de Utah. Lo antes, en consideración a que ambas partes residen en dicho estado desde hace más de cuatro años y que el descubrimiento de prueba ante el TPI nunca comenzó. A esos efectos, el TPI dictaminó que, el estado de Utah es el foro más adecuado para dirimir esta controversia en la medida en que, una modificación a la pensión excónyuge pudiese repercutir en los ingresos considerados al fijar la pensión alimentaria a favor de los menores.

A lo antes se añade que, el peticionario no demostró que el dictamen recurrido sea contrario a Derecho o que el foro primario actuó mediante pasión, prejuicio, parcialidad o error manifiesto al negarse a asumir jurisdicción sobre este asunto, tal cual lo exige la Regla 40 de nuestro Reglamento, *supra.* Tampoco el peticionario acreditó que mantener en vigor el dictamen cuestionado constituiría un fracaso irremediable a la justicia. En ausencia de tales fundamentos, determinamos denegar la expedición del auto de *certiorari.*

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Rivera-Marchand disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones